1  RAYMOND H. AVER - State Bar No. 109577
   LAW OFFICES OF RAYMOND H. AVER
2  A Professional Corporation
   1950 Wilshire Boulevard, Suite 120
3  Los Angeles, California 90025
   Telephone: (310) 571-3511
4  e-mail: ray@averlaw.com

5  [Proposed] General Insolvency Counsel for
   Q RANCH PROVISIONS L.A., INC.
6  Debtor and Debtor In Possession

7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA [LOS ANGELES DIVISION]

10

11  In re:                          Case No. 2:14-bk-19271-BR

12  Q RANCH PROVISIONS L.A.,        Chapter 11
    INC.,
13                                  ORIGINAL DISCLOSURE STATEMENT
                                    DESCRIBING DEBTOR'S CHAPTER 11
14         Debtor.                  PLAN

15

16

17

18                                  Disclosure Statement Hearing

19                                  Date:  August 5, 2014
                                    Time:  10:00 a.m.
20                                  Place: Courtroom 1668
                                       United States Bankruptcy Court
21                                     255 East Temple Street
                                       Los Angeles, California  90012
22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . .    1
     A.   Purpose of This Document . . . . . . . . .    1
     B.   Deadlines for Voting and Objecting; Date of Plan
          Confirmation Hearing . . . . . . . . . . .    2
          1.   Time and Place of the Confirmation
               Hearing . . . . . . . . . . . . . . .    3
          2.   Deadline for Voting For or Against the
               Plan . . . . . . . . . . . . . . . . .    3
          3.   Deadline for Objecting to the Confirmation
               of the Plan . . . . . . . . . . . . .    3
          4.   Identity of Person to Contact for More
               Information Regarding the Plan . . . . .    3
     C.   Disclaimer . . . . . . . . . . . . . . . .    4

II.  BACKGROUND . . . . . . . . . . . . . . . . . .    4
     A.   Description and History of the Debtor's
          Business . . . . . . . . . . . . . . . . .    4
     B.   Principals/Affiliates of Debtor's Business . . . .    5
     C.   Management of the Debtor Before and After the
          Bankruptcy . . . . . . . . . . . . . . . .    5
     D.   Events Leading to Chapter 11 Filing . . . . . . .    5
     E.   Significant Events . . . . . . . . . . . . .    6
          1.   Bankruptcy Proceedings . . . . . . . . .    6
          2.   Other Legal Proceedings . . . . . . . . .    7
          3.   Actual and Projected Recovery of
               Preferential or Fraudulent Transfers . . . .    8
          4.   Procedures Implemented to Resolve Financial
               Problems . . . . . . . . . . . . . . .    8
          5.   Current and Historical Financial
               Conditions . . . . . . . . . . . . . .    8

III. SUMMARY OF THE PLAN OF REORGANIZATION . . . . . . . .    9
     A.   What Creditors and Interest Holders Will Receive
          Under the Proposed Plan . . . . . . . . . .    9
     B.   Unclassified Claims . . . . . . . . . . . .    9
          1.   Administrative Expenses . . . . . . . .    9
          2.   Priority Tax Claims . . . . . . . . . .   11
     C.   Classified Claims and Interests . . . . . . . .   12
          1.   Classes of Secured Claims . . . . . . .   12
          2.   Classes of Priority Unsecured Claims . . . .   12
          3.   Classes of General Unsecured Claims . . . .   13
          4.   Class(es) of Interest Holders . . . . . . .   13
     D.   Means of Effectuating the Plan . . . . . . . . .   14
          1.   Funding for the Plan . . . . . . . . .   14
          2.   Post-Confirmation Management . . . . . . .   14
          3.   Disbursing Agent . . . . . . . . . . .   14
     E.   Risk Factors . . . . . . . . . . . . . . .   15
     F.   Other Provisions of the Plan . . . . . . . . .   15
          1.   Executory Contracts and Unexpired Leases . .   15
               a.   Assumptions . . . . . . . . . . .   15
               b.   Rejections . . . . . . . . . . .   15

2.  Changes in Rates Subject to Regulatory
    Approval . . . . . . . . . . . . . . . . . . 16
3.  Retention of Jurisdiction . . . . . . . . . . 16
G.  Tax Consequences of Plan . . . . . . . . . . . . 17

IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . . . 17
A.  Who May Vote or Object . . . . . . . . . . . . . . 17
    1.  Who May Object to Confirmation of the
        Plan . . . . . . . . . . . . . . . . . . . . 17
    2.  Who May Vote to Accept/Reject the Plan . . . 17
        a.  What is an Allowed Claim/Interest . . . 18
        b.  What Is an Impaired Claim/Interest . . . 18
    3.  Who is Not Entitled to Vote . . . . . . . . 19
    4.  Who Can Vote in More Than One Class . . . . . 19
    5.  Votes Necessary to Confirm the Plan . . . . . 19
    6.  Votes Necessary for a Class to Accept the
        Plan . . . . . . . . . . . . . . . . . . . . 20
    7.  Treatment of Nonaccepting Classes . . . . . . 20
    8.  Request for Confirmation Despite Nonacceptance
        by Impaired Class(es) . . . . . . . . . . . . 20
B.  Liquidation Analysis . . . . . . . . . . . . . . 21
C.  Feasibility . . . . . . . . . . . . . . . . . . . 24

V.  **EFFECT OF CONFIRMATION OF PLAN** . . . . . . . . . . . . 26
A.  Discharge . . . . . . . . . . . . . . . . . . . . 26
B.  Revesting of Property in the Debtor . . . . . . . 26
C.  Modification of Plan . . . . . . . . . . . . . . 26
D.  Post-Confirmation Status Report . . . . . . . . . 26
E.  Quarterly Fees . . . . . . . . . . . . . . . . . 27
F.  Post-Confirmation Conversion/Dismissal . . . . . . 27
G.  Final Decree . . . . . . . . . . . . . . . . . . 27

VI. **SUPPORTING DECLARATIONS** . . . . . . . . . . . . . . . 29

EXHIBIT A - LIST OF ALL ASSETS . . . . . . . . . . . . 30
EXHIBIT B - PROJECTED INCOME AND EXPENSES STATEMENTS. . 31
EXHIBIT C - LIST OF ADMINISTRATIVE EXPENSE CLAIMS . . . 32
EXHIBIT D - LIST OF UNSECURED CREDITORS . . . . . . . . 33
EXHIBIT E - LIST OF EQUITY INTERESTS. . . . . . . . . . 35
EXHIBIT F - UNEXPIRED LEASES AND EXECUTORY CONTRACTS TO
            BE ASSUMED . . . . . . . . . . . . . . . . 36

# I.

## INTRODUCTION

Q Ranch Provisions L.A., Inc. ("Q Ranch," "Debtor" or "Proponent") is the debtor in a chapter 11 bankruptcy case.  On May 12, 2014 ("Petition Date"), Q Ranch caused to be filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Central District of California [Los Angeles Division] ("Court").  Chapter 11 allows the debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Q Ranch is the party proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan.  In other words, Q Ranch seeks to accomplish payments under the Plan by restructuring its debts and business operations.  The effective date of the proposed Plan is 45 days after entry of a final order confirming the Plan ("Effective Date").

**A.    Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)    WHO CAN VOTE OR OBJECT,

(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim

Law Offices
of Raymond
H. Aver, APC

will receive if the Plan is confirmed), **AND HOW THIS**
**TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN**
**LIQUIDATION,**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE**
**BANKRUPTCY,**

(4) **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT**
**TO CONFIRM THE PLAN,**

(5) **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6) **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation**
**Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL

Law Offices
of Raymond
H. Aver, APC

1  CREDITORS AND INTEREST HOLDERS IN THIS CASE.

2      **1.    Time and Place of the Confirmation Hearing**

3      The hearing where the Court will determine whether or not to

4  confirm the Plan will take place on _____ ___, 2014, at

5  ____ (a.m./p.m.), in Courtroom 1668, United States Bankruptcy Court,

6  255 East Temple Street, Los Angeles, California  90012.

7      **2.    Deadline For Voting For or Against the Plan**

8      If you are entitled to vote, it is in your best interest to

9  timely designate your vote on the enclosed ballot and return the

10  ballot in the enclosed envelope to:

11      Law Offices Of Raymond H. Aver, APC
        1950 Sawtelle Boulevard, Suite 120
12      Los Angeles, California 90025
        Attn: Raymond H. Aver, Esquire
13

14      Your ballot must be received by _____ ____, 2014, or it

15  will not be counted.

16      **3.    Deadline For Objecting to the Confirmation of the Plan**

17      Objections to the confirmation of the Plan must be filed with

18  the Court and served upon:

19      Law Offices Of Raymond H. Aver, APC
        1950 Sawtelle Boulevard, Suite 120
20      Los Angeles, California 90025
        Attn: Raymond H. Aver, Esquire
21

22  by regular mail and e-mail by _____ ____, 2014.

23      **4.    Identity of Person to Contact for More Information**

24      **Regarding the Plan**

25      Any interested party desiring further information about the Plan

26  should contact:

27  ///

28  ///

Law Offices Of Raymond H. Aver, APC
1950 Sawtelle Boulevard, Suite 120
Los Angeles, California 90025
Attn: Raymond H. Aver, Esquire
Telephone No. (310) 571-3511

## C. Disclaimer

The financial data and information relied upon in formulating the Plan is based on Q Ranch's financial records and information and was provided by Nereo Perez ("Perez"), the President of Q Ranch. The Plan Proponent represents that everything stated in the Disclosure Statement is true to Proponent's best knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

## A. Description and History of the Debtor's Businesses

Q Ranch is a California corporation. Q Ranch is a privately held company engaged in the business of purchasing, processing and selling chicken and meat products. Q Ranch was incorporated toward the end of 2012. Q Ranch employs approximately 40 individuals.

Q Ranch does not own any real estate. Q Ranch leases the following two commercial real properties: (a) commercial real property located at 2502 & 2504 Lee Avenue, South El Monte, California 91733, which is being used for storage and packing purposes; and (b) 2508 Lee Avenue, South El Monte, California 91733, which is being used for processing and distribution of poultry (90%) and beef (10%) and related activities.

Q Ranch's major assets include accounts receivable, security

1  deposits with its landlords, and certain inventory, supplies,

2  machinery, fixtures and equipment.

3  **B.   Principals/Affiliates of Debtor's Business**

4     Perez is the President of Q Ranch who also owns, controls or

5  holds a 100% ownership interest in Q Ranch.  There are no affiliates

6  of Q Ranch.

7  **C.   Management of the Debtor Before and After the Bankruptcy**

8     Perez has continued to operate Q Ranch from its inception

9  through present.

10  **D.   Events Leading to Chapter 11 Filing**

11     The following is a brief summary of some of the circumstances

12  that <u>led to the filing</u> of this Chapter 11 case:

13     Q Ranch is the defendant in two lawsuits, one pending before the

14  United States Bankruptcy Court for the Central District of California

15  [Los Angeles Division], *New Meatco Provisions, LLC v. Q Ranch*

16  *Provisions L.A., Inc.*, Adv. No. 2:13-ap-02212-DS ("Preferential

17  Transfer Avoidance Adversary") and the other pending before the

18  Superior Court of the State of California for the County of Los

19  Angeles [Central Division], *National Commercial Recovery v. Q Ranch*

20  *Provisions L.A., Inc.*, Case No. BC530320 ("State Court Collection

21  Action").

22     <u>Preferential Transfer Avoidance Adversary</u>.  New Meatco

23  Provisions, LLC ("New Meatco") commenced the Preferential Transfer

24  Avoidance Adversary by filing a "Complaint For: (1) Avoidance And

25  Recovery Of Preferential Transfers [11 U.S.C. §§547(b), And 550]; (2)

26  Preservation Of Avoided Transfers [11 U.S.C. §551]; And (3)

27  Disallowance Of Any Claims By Defendant(s) [11 U.S.C. §502(d)]"

28  ("Preferential Transfer Avoidance Complaint") on March 4, 2014.  New

1  Meatco alleges in its Preferential Transfer Avoidance Complaint that

2  New Meatco "made transfers of property, totaling $1,395,647.07 to and

3  for the benefit of [Q Ranch]" within the preferential period

4  prescribed by 11 U.S.C. §547.  On January 28, 2014, Q Ranch caused to

5  be filed an answer to the complaint denying the vast majority of the

6  allegations of the Preferential Transfer Avoidance Complaint and

7  asserting various affirmative defenses, including the offset defense,

8  the contemporaneous exchange defense, the subsequent new value

9  defense and the ordinary course of business defense.   The

10 Preferential Transfer Avoidance Adversary is in its early litigation

11 stage; the Court has yet to rule on the merits of the case.

12      State Court Collection Action.   Q Ranch had been performing

13 under a forbearance agreement with K1 International, LLC when the

14 debt was assigned to National Commercial Recovery, Inc. ("NCR") for

15 collection.  On December 12, 2013, NCR caused to be commenced the

16 State Court Collection Action by filing a "Complaint For Money;

17 Common Counts."  NCR has subsequently filed an Application For Right

18 to Attach Order And For Order For Issuance Of Writ Of Attachment.

19 Were NCR to obtain a writ of attachment, Q Ranch would have

20 insufficient capital to remain in business.

21 **E.    Significant Events During the Bankruptcy**

22      **1.   Bankruptcy Proceedings**

23      The following is a chronological list of significant events

24 which have occurred during this case:

25      •    On May 12, 2014, Q Ranch caused to be filed an emergency

26           chapter 11 voluntary petition for reorganization;

27      •    On May 27, 2014, Q Ranch caused to be filed its bankruptcy

28           schedules, statement of financial affairs, and related

1  chapter 11 forms;

2  •  On June 23, 2014, Perez appeared and testified on Q Ranch's

3  behalf at the Section 341(a) First Meeting Of Creditors.

4  The Court has approved the employment of the following

5  professionals:

6  •  Q Ranch is seeking to employ the Law Offices of Raymond H.

7  Aver, A Professional Corporation ("Aver Firm") as its

8  general insolvency counsel, with such employment being

9  effective as of the Petition Date.  To that end, on June 9,

10  2014, Q Ranch caused to be filed an "Application By Debtor

11  And Debtor In Possession To Employ Law Offices Of Raymond

12  H. Aver, A Professional Corporation, As General Insolvency

13  Counsel" ("Employment Application").  No objection to the

14  Employment Application has been filed or received by Q

15  Ranch or the Aver Firm.

16  •  Q Ranch may seek to employ special litigation counsel to

17  represent Q Ranch in the Preferential Transfer Avoidance

18  Adversary.

19  •  Q Ranch does not anticipate a need to retain any other

20  professionals at this time.

21  There are no significant adversary proceedings or motions

22  pending at the present time.

23  **2.  Other Legal Proceedings**

24  Other than the State Court Collection Action and the Fraudulent

25  Transfer Avoidance Adversary, which actions were stayed as a result

26  of the filing of the instance bankruptcy case, Q Ranch is not

27  currently involved in any other nonbankruptcy legal proceedings.

28  ///

**3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers**

Q Ranch has reviewed its books and records, and it does not appear that any fraudulent or preferential transfers were made by Q Ranch; therefore, there will not be any recovery of any fraudulent or preferential transfers.

**4.    Procedures Implemented to Resolve Financial Problems**

Q Ranch has undertaken the following in an effort to resolve its financial problems:

- Q Ranch has attempted to engage in discussion with New Meatco and NCR prior to the Petition Date in an effort to consensually resolve New Meatco's and NCR's claims; and

- Q Ranch has attempted to make the necessary business operation changes in an effort to increase its revenues and reduce the costs.

**5.    Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets, as of the Petition Date, are listed in **Exhibit A**.  Q Ranch anticipates its monthly income and expenses will remain stable during the term of the Plan (i.e., Q Ranch will increase its charges/volume to the extent expenses increase).  A true and correct copy of the projected income and expense statement is attached as **Exhibit B**.

///

///

///

# III.

## SUMMARY OF THE PLAN OF REORGANIZATION

**A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has <u>not</u> placed the following claims in a class.

**1.    Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering a debtor's Chapter 11 case which are allowed under Code section 507(a)(2).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's §507(a)(2) administrative claims and their treatment under the Plan (See, **Exhibit C** for information about each administrative expense claim):

| Name | Amount Owed | Treatment |
|------|-------------|-----------|
| Aver Firm<br><br>(Q Ranch's [proposed] general insolvency counsel) | $ 30,000 (est).  This balance is net of the retainer and post petition payments, and is subject to Court approval | Paid in full on the Effective Date unless the Aver Firm agrees to accept periodic post confirmation payments from Q Ranch, its principal or any other 3rd party in satisfaction of any Court approved legal fees and reimbursement of costs |
| Office of the United States Trustee ("OUST") | $ 10,400.00 | Paid in full on Effective Date |
| Court Clerk | -0- | Paid in full on Effective Date |
|  | TOTAL $40,400 (est) |  |

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed.  For all fees except Clerk's Office fees and the OUST's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, Q Ranch will need to pay approximately $40,400.00 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.  As indicated elsewhere in this Disclosure Statement, it is anticipated Q Ranch will have sufficient amount of cash on hand on the Effective Date of the Plan to pay all administrative claims in full.  The source of this cash will be cash on hand, net profits generated by Q Ranch, and a "new value" contribution from Q Ranch's principal.

///

## 2.   Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim be paid in full within 5 years of the order for relief and on terms not less favorable than those accorded the most favored non-priority creditor.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| Name = Internal Revenue Service ("IRS")<br><br>Type of tax = Corporate Income Tax<br><br>Taxable period = 2012, 2013, 2014 | $1,320.71 | Date of order for relief = 5/12/2014<br><br>Total amount of allowed claim as of 5/12/2014 = $1,320.71<br><br>Begin date = Effective Date<br><br>Treatment = this claim, and any amended claim, will be paid in full on the Effective Date |

| Description | Amount Owed | Treatment |
|---|---|---|
| Name = Franchise Tax Board ("FTB")<br><br>Type of tax = Corporate Income Tax<br><br>Taxable period = 2012, 2013, 2014 | $2,499.64 | Date of order for relief = 5/12/2014<br><br>Total amount of allowed claim as of 5/12/2014 = $2,499.64<br><br>Begin date = Effective Date<br><br>Treatment = this claim, and any amended claim, will be paid in full on the Effective Date |

Law Offices
of Raymond
H. Aver, APC

C.   **Classified Claims and Interests**

    1.   **Classes of Secured Claims**

    Secured claims are claims secured by liens on property of the estate.   The following chart lists all classes containing Debtor's secured pre petition claims and their treatment under this Plan: **None**

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| | Secured claim of:<br><br>•   Name =<br>•   Collateral description =<br>•   Collateral value =<br>•   Priority Of Security Interest =<br>•   Total claim amount = | | | |

2.   **Classes of Priority Unsecured Claims**

    Certain priority claims that are referred to in Code Sections 507(a)(1), (4), (5), (6), and (7) are required to be placed in classes.   These types of claims are entitled to priority treatment as follows:   the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

    Q Ranch does not have any creditors whose claims are entitled to priority under Code Sections 507(a)(1), (a)(4), (a)(5), (a)(6), or (a)(7).

///

///

Law Offices
of Raymond
H. Aver, APC

### 3.   Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtor's general unsecured claims (*See*, **Exhibit D** for information about each general unsecured claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | General unsecured claims<br><br>• Total amount of claims = $3,310,342.78 (est.)<br><br>This includes the disputed unsecured claims of New Meatco and NCR in the amounts of $1,395,647.07 and $862,009.83, respectively ("Disputed Unsecured Claimants"). Q Ranch reserves the right to object to the proofs of claim filed on behalf of Class 1 claimants.  In the event Q Ranch prevails on the claim objections against the disputed claimants, it may significantly increase the percentage recovery Q Ranch proposes to pay to its Class 1 claimants, other than the Disputed Unsecured Claimants. | Impaired<br><br>(Claims in this class are entitled to vote on the Plan) | General unsecured creditors will receive a dividend of 25% of their allowed claims, paid in 20 equal quarterly installments of $41,379.30 each quarter after the Effective Date, with the first payments date to be on the first day of the month that begins the calendar quarter (i.e., January, April, June, October).  The final payment date will be on the first day of the month of the 20th calendar quarter after the payments have commenced.  The total amount paid to general unsecured creditors will be approximately $827,586.00. |

### 4.   Class(es) of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the debtor.  If the debtor is a corporation, entities holding preferred or common stock in the

Law Offices
of Raymond
H. Aver, APC

debtor are interest holders.  If the debtor is a partnership, the
interest holders include both general and limited partners.  If the
debtor is an individual, the debtor is the interest holder.
The following chart identifies the Plan's treatment of the class of
interest holders (*See*, **Exhibit E** for information about each interest
holder):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 2 | Perez owns, controls or hold a 100% ownership interest in Q Ranch | Unimpaired (Claims in this class are not entitled to vote on the Plan) | Perez will retain his interest in Q Ranch |

**D.    Means of Effectuating the Plan**

    **1.    Funding for the Plan**

The Plan will be funded by the following:

- Cash on hand;
- Net profits generated by Q Ranch during the term of the Plan, which is projected to average approximately $254,000.00 per year; and
- A "new value" contribution of $50,000.00 from Perez.

    **2.    Post-Confirmation Management**

There will be no change in management.  Perez will continue to
operate Q Ranch.

    **3.    Disbursing Agent**

Q Ranch shall act as the disbursing agent for the purpose of
making all distributions under the Plan.  The Disbursing Agent shall
serve without bond and shall not receive a fee for distribution

Law Offices
of Raymond
H. Aver, APC

1  services rendered and expenses incurred pursuant to the Plan.

2  **E.    Risk Factors**

3      Q Ranch may not be able to generate as much net income as
4  projected during the term of the Plan.  Q Ranch may request that the
5  Court confirm the Plan by cramdown if Class 1 claimants do not vote
6  in favor of the Plan.

7  **F.    Other Provisions of the Plan**

8      **1.    Executory Contracts and Unexpired Leases**

9      **a.    Assumptions/Rejections**

10      Q Ranch intends to assume all unexpired leases and/or executory
11  contracts listed in its bankruptcy Schedule G, a true and correct
12  copy of which is attached as **Exhibit F** hereto.  On the Effective
13  Date, each of the unexpired leases and executory contracts listed in
14  bankruptcy Schedule G shall be assumed as an obligation of the
15  reorganized Debtor.  The order of the Court confirming the Plan shall
16  constitute an order approving the assumption of each unexpired
17  lease/executory contract listed in bankruptcy Schedule G.  If you are
18  a party to lease or contract to be assumed and you object to the
19  assumption of your lease or contract, you must file and serve your
20  objection to the Plan within the deadline for objecting to the
21  confirmation of the Plan.

22      **b. Rejections**

23      On the Effective Date, the following executory contracts and
24  unexpired leases will be rejected: **None**

25      The order confirming the Plan shall constitute an order
26  approving the rejection of the lease or contract.  If you are a party
27  to a contract or lease to be rejected and you object to the rejection
28  of your contract or lease, you must file and serve your objection to

Law Offices
of Raymond
H. Aver, APC

*ORIGINAL DISCLOSURE STATEMENT*

1  the Plan within the deadline for objecting to the confirmation of the

2  Plan.

3      THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON CLAIM ARISING

4  FROM THE REJECTION OF A LEASE OR CONTRACT HAS YET TO BE SCHEDULED BY

5  THE COURT.  Any claim based on the rejection of a contract will be

6  barred if the proof of claim is not timely filed, unless the Court

7  later orders otherwise.

8      **2.   Changes in Rates Subject to Regulatory Commission Approval**

9      Q Ranch *is not* subject to governmental regulatory commission

10  approval of its rates.  Therefore, compliance with Bankruptcy Code

11  section 1129(a)(6) is not required.

12     **3.   Retention of Jurisdiction.**

13     The Court will retain jurisdiction to the extent provided by

14  law.

15  **G.   Tax Consequences of Plan**

16     CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY

17  AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS,

18  ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax

19  consequences is intended solely for the purpose of alerting readers

20  about possible tax issues this Plan may present to the debtor.  The

21  Proponent CANNOT and DOES NOT represent that the tax consequences

22  contained below are the only tax consequences of the Plan because the

23  Tax Code embodies many complicated rules which make it difficult to

24  state completely and accurately all the tax implications of any

25  action.  The following are the tax consequences which the Plan will

26  have on Q Ranch's tax liability: Q Ranch is a C Corporation and

27  therefore the tax consequences of this plan will not "flow through"

28  to the owner of Q Ranch, Perez.

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and whether the Plan is feasible.  These requirements are _not_ the only requirements for confirmation.

## A.    Who May Vote or Object

### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

///

a.    **What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE HAS YET TO BE SCHEDULED BY THE COURT.  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult **Exhibit C**, **Exhibit D** and **Exhibit E**, attached hereto, to see how the Proponent has characterized your claim or interest.

b.    **What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, Proponent believes Class 1 is impaired and that holders of claims in this class is therefore entitled to vote to

accept or reject the Plan. Proponent believes that Class 2 is not impaired; therefore, Class 2 does not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3. Who is _Not_ Entitled to Vote

The following four types of claims are _not_ entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(2), (a)(3), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan

Law Offices
of Raymond
H. Aver, APC

unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section IV(A)(8).

### 6.    Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half ($\frac{1}{2}$) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7.    Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8.    Request for Confirmation Despite Nonacceptance by
###        Impaired Class(es)

The party proposing this Plan *will* ask the Court to confirm this Plan by cramdown on impaired Class 1 even if this class does not vote

1   to accept the Plan.

2       Please note that the proposed Plan treatment described by this

3   Disclosure Statement cannot be crammed down on the following classes:

4   **None.**  AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT

5   THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

6

7   **B.   Liquidation Analysis**

8       Another confirmation requirement is the "Best Interest Test,"

9   which requires a liquidation analysis.  Under the Best Interest Test,

10  if a claimant or interest holder is in an impaired class and that

11  claimant or interest holder does not vote to accept the plan, then

12  that claimant or interest holder must receive or retain under the

13  plan property of a value not less than the amount that such holder

14  would receive or retain if the debtor were liquidated under chapter 7

15  of the Bankruptcy Code.

16      In a chapter 7 case, the debtor's assets are usually sold by a

17  chapter 7 trustee.  Secured creditors are paid first from the sales

18  proceeds of properties on which the secured creditor has a lien.

19  Administrative claims are paid next.  Next, unsecured creditors are

20  paid from any remaining sales proceeds, according to their rights to

21  priority.  Unsecured creditors with the same priority share in

22  proportion to the amount of their allowed claim in relationship to

23  the amount of total allowed unsecured claims.  Finally, interest

24  holders receive the balance that remains after all creditors are

25  paid, if any.

26      For the Court to be able to confirm this Plan, the Court must

27  find that all creditors and interest holders who do not accept the

28  Plan will receive at least as much under the Plan as such holders

1  would receive under a chapter 7 liquidation.   The Plan Proponent

2  maintains that this requirement is met here for the following

3  reasons:

4  •    In a chapter 7 case, a trustee is appointed and entitled to

5        compensation from the bankruptcy estate in an amount not to

6        exceed 25% of the first $5,000 of all moneys disbursed, 10%

7        on any amount over $5,000 but less than $50,000, 5% on any

8        amount over $50,000 but not in excess of $1 million, and 3%

9        on all amounts over $1 million.

10  •    In a chapter 7 case, the trustee would likely need to

11        retain counsel and an accountant.   There would be time and

12        expense factor for both counsel and the accountant to

13        become familiar with the Debtor's assets, liabilities, and

14        the issues pertaining thereto.   It is estimated to cost in

15        the range of $20,000.00 to $30,000.00 for counsel and the

16        accountant to become sufficiently familiar to adequately

17        represent the estate.

18  Below is a demonstration, in balance sheet format, that all

19  creditors and interest holders will receive at least as much under

20  the Plan as such creditor or interest holder would receive under a

21  Chapter 7 liquidation.   (*See*, **Exhibit A** for an explanation of how the

22  following assets are valued.)   This information is provided by Q

23  Ranch:

24

25

26

27

28

ASSETS AT LIQUIDATION VALUES:

CURRENT ASSETS
a.    Cash on hand (as of the Petition Date)       $        720.88
b.    Accounts receivable                          $     456,733.20
c.    Inventories                                  $      50,000.00
      TOTAL CURRENT ASSETS                         $     507,454.08

FIXED ASSETS
a.    Office furniture & equipment                 $       3,500.00
b.    Machinery & equipment                        $      60,000.00
c.    Automobiles                                  $           0.00
d.    Real Property                                $           0.00

      TOTAL FIXED ASSETS                           $      63,500.00


OTHER ASSETS                                       $           0.00
a.    Customer list                                $           0.00
b.    Other intangibles                            $           0.00
      TOTAL OTHER ASSETS                           $           0.00

TOTAL ASSETS AT LIQUIDATION VALUE                  $     570,953.88

Less:
Secured creditor's recovery                        $           0.00
Less:
Chapter 7 trustee fees and expenses (est)          $      28,547.69
Less:
Chapter 7 trustee professional fees (est)          $      25,000.00
Less:
Chapter 11 administrative expenses (est)           $      40,400.00
Less:
Priority claims,
excluding administrative expense claims            $       3,820.35
Less:
(1) Balance for unsecured claims                   $     473,186.19
(2) Total amt of unsecured claims                  $   3,310,342.78


% OF THEIR CLAIMS WHICH UNSECURED CREDITORS
WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION
= 14%

% OF THEIR CLAIMS WHICH UNSECURED CREDITORS
WILL RECEIVE OR RETAIN UNDER THIS PLAN = 25%

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100% | 0% |
| Priority Tax Claims | 100% | 0% |
| Class 1 - General unsecured creditors | 25% | 14% |
| Class 2 - Interest holders | N/A | N/A |

## C. Feasibility

Another requirement for confirmation involves the feasibility of the plan, which means that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the debtor will have enough cash on hand on the Effective Date of the plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

///

///

///

| | |
|---|---|
| Cash Q Ranch will have on hand by Effective Date | $146,891.15 |
| To Pay: Administrative claims | - 30,000.00 |
| To Pay: Statutory costs & charges | - 10,400.00 |
| To Pay: Other Plan Payments due on Effective Date | - 3,820.35 |
| Balance after paying these amounts .............. | $102,670.80 |

The sources of the cash Q Ranch will have on hand by the Effective date, as shown above are:

$ 96,891.15  Cash in DIP Account (as of June 30, 2014)
+
$ 50,000.00  A "New Value" contribution from Perez
$146,891.15  Total

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.  Q Ranch anticipates its income and expenses will remain stable during the term of the Plan.  A true and correct copy of the projected income and expense statement is attached as **Exhibit B** hereto.  YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay Class 1 (General Unsecured Creditors) 25% of their claims and enables Class 2 (Interest Holder) to retain his interest.  As demonstrated in Q Ranch's financial projections, Q Ranch will have a net monthly income of approximately $63,470.97 each quarter during the 5 year period without deducting the Plan payments (or $11,691.67 per quarter after all required monthly Plan payments have been made).  The final Plan payment is expected to be on the first day of the month of the 20th calendar quarter after the payments have commenced.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    Discharge**

This Plan provides that upon substantial consummation of the Plan, Q Ranch shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141.   However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Debtor**

Except as provided in Section V(E), below, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in Q Ranch.

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation.   However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, the Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.   The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice.   Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. §1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. §1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. §1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate.  The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.    Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close

1   the case.

2

3   Date:        July 21, 2014

4

5        Q Ranch Provisions L.A., Inc.
         Name and Identity of Plan Proponent

6

7        Signature of the Representative of the Plan Proponent

8

         Nereo Perez, President of Q Ranch Provisions L.A., Inc.
         Name of the Representative of the Plan Proponent

9

10           Signature of Attorney for Plan Proponent

11

12        Raymond H. Aver, Esquire
          Name of Attorney for Plan Proponent

13

          Law Offices Of Raymond H. Aver, APC
14        Name of Law Firm for Plan Proponent

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# VI.

## SUPPORTING DECLARATION

I, NEREO PEREZ, declare:

1.   I am the President of Q Ranch Provisions L.A., Inc. ("Q Ranch" or "Debtor"), the debtor and debtor in possession in the chapter 11 case captioned *In Q Ranch Provisions L.A., Inc.*, Case No. 2:14-bk-19271-BR.

2.   I have personal knowledge of operations of Q Ranch's business and assets.

3.   I assisted in preparation of the "Original Disclosure Statement Describing Debtor's Chapter 11 Plan" ("Disclosure Statement").

4.   I have reviewed the Disclosure Statement and attest to the truthfulness and accuracy of the facts set forth therein.

5.   I make this declaration of my personal knowledge, except for those facts which I believe based on information and belief.  If called upon as a witness in this matter, I could and would testify competently to the foregoing.

Executed this 21st day of July, 2014, at South El Monte, California.  I declare under penalty of perjury that the foregoing is true and correct.

_____
NEREO PEREZ

Law Offices
of Raymond
H. Aver, APC

# EXHIBIT A - LIST OF ALL ASSETS
## (Valuation as of May 12, 2014)

| | |
|---|---|
| Cash on hand | $        500.00 |
| Bank of the West Checking Account | $        220.68 |
| Accounts receivable | $ 456,733.20 |
| Office equipment, furnishings and supplies | $     3,500.00 |
| Machinery, fixtures and equipment | $   60,000.00 |
| Inventory | $   50,000.00 |
| Total: | $570,953.88 |

Law Offices
of Raymond
H. Aver, APC

**EXHIBIT B - PROJECTED INCOME AND EXPENSES STATEMENT**

Law Offices
of Raymond
H. Aver, APC

## Q RANCH PROVISIONS LA - INCOME AND EXPENSE 5 YEAR PROJECTIONS

| Income/Expenses | Monthly | Quarterly |
|---|---|---|
| Income | Amount | Amount |
| Sales | $1,380,676.60 | $4,142,029.80 |
| Cost of Goods Sold/Purchases | $1,197,841.10 | $3,593,523.30 |
| **Gross Profit** | **$182,835.50** | **$548,506.50** |
| | | |
| Expenses | | |
| Auto/Truck Expenses | $20,499.19 | $61,497.57 |
| Bank Service Charges | $968.60 | $2,905.80 |
| Cleaning and maintenance | $560.94 | $1,682.82 |
| Commission | $5,302.33 | $15,906.99 |
| Fumigation | $79.53 | $238.59 |
| Ice | $2,522.93 | $7,568.79 |
| Inspections | $2,963.93 | $8,891.79 |
| Licenses and permits | $127.21 | $381.63 |
| Meals and entertainment | $102.54 | $307.62 |
| Office supplies | $307.47 | $922.41 |
| Payroll | $74,964.84 | $224,894.52 |
| Printing and reproduction | $322.09 | $966.27 |
| Professional fees | $1,000.00 | $3,000.00 |
| Rent | $10,000.00 | $30,000.00 |
| Repairs and maintenance | $7,928.44 | $23,785.32 |
| Sanitation | $8,013.28 | $24,039.84 |
| Services | $1,018.60 | $3,055.80 |
| Storage | $1,713.02 | $5,139.06 |
| Supplies | $14,710.74 | $44,132.22 |
| Telephone | $1,173.85 | $3,521.55 |
| Uniform rentals | $1,637.70 | $4,913.10 |
| Utilities | $5,761.28 | $17,283.84 |
| **Total Expenses** | **$161,678.51** | **$485,035.53** |
| | | |
| Administrative Fees | Amount | Amount |
| United States Trustee's Quarterly Fees | **$3,466.67** | **$10,400.00** |
| | | |
| Unsecured Creditors | **$13,793.10** | **$41,379.30** |
| | | |
| **Total Expenses** | **$178,938.28** | **$536,814.83** |
| | | |
| **TOTAL NET INCOME** | **$3,897.22** | **$11,691.67** |

UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
CENTRAL DISTRICT OF CALIFORNIA

| In Re:                          | CHAPTER 11 (BUSINESS)         |                |
|---------------------------------|-------------------------------|----------------|
| Q Ranch Provisions L.A., Inc.   | Case Number:                  | 2:14-bk-19271-BR |
|                                 | Operating Report Number:      | 2              |
| Debtor(s).                      | For the Month Ending:         | 6/30/2014      |

## I. CASH RECEIPTS AND DISBURSEMENTS
### A. (GENERAL ACCOUNT*)

1. TOTAL RECEIPTS PER ALL PRIOR GENERAL ACCOUNT REPORTS      60,245.46

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR GENERAL      15,765.50
ACCOUNT REPORTS

3. BEGINNING BALANCE:      $44,479.96

4. RECEIPTS DURING CURRENT PERIOD:
   Accounts Receivable - Post-filing _____
   Accounts Receivable - Pre-filing _____
   General Sales _____
   Other (Specify) _____ _____
   **Other (Specify) _____ _____

   TOTAL RECEIPTS THIS PERIOD:****      $590,027.02

5. BALANCE:      $634,506.98

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
   Transfers to Other DIP Accounts (from page 2)      $0.00
   Disbursements (from page 2)      $543,100.92

   TOTAL DISBURSEMENTS THIS PERIOD:***      $543,100.92

7. ENDING BALANCE:      $91,406.06

8. General Account Number(s):      **General DIP Account******
        **Bank of the West, Account No. ****2564**
   Depository Name & Location:      **Baldwin Park Branch**
        **14220 Ramona Blvd.**
        **Baldwin Park, California 91706**

\*  All receipts must be deposited into the general account.
\*\*  Include receipts from the sale of any real or personal property out of the ordinary course of business; attach an exhibit specifying what was sold,
    to whom, terms, and date of Court Order or Report of Sale.
\*\*\*This amount should be the same as the total from page 2.
\*\*\*\*In addition to the funds deposited in the General DIP Account, Expense DIP Account, and Payroll DIP Account, Q Ranch Provisions, L.A. also received
    approximately $606,715.69 in gross income in June 2014, which funds were used to obtain cashiers checks to pay certain vendors who accept payments
    in the form of cashiers checks only. Please see page 10 for a list of these transactions.

TOTAL DISBURSEMENTS FROM GENERAL ACCOUNT FOR CURRENT PERIOD  N/A

| Date mm/dd/yyyy | Check Number | Payee or DIP account | Purpose | *Amount Transfered | **Amount Disbursed | Amount |
|---|---|---|---|---|---|---|
| 6/2/2014 | | Bank of West | Monthly Charges | | 10.00 | 10.00 |
| 6/2/2014 | 1182 | Rocky's Foods | Purchased Goods | | 35,000.00 | 35,000.00 |
| 6/4/2014 | ACH | Hardland Checks | Order Checks | | 386.83 | 386.83 |
| 6/4/2014 | 1184 | T&T Foods | Purchased Goods | | 15,000.00 | 15,000.00 |
| 6/5/2014 | 1185 | Rocky's Foods | Purchased Goods | | 40,000.00 | 40,000.00 |
| 6/6/2014 | ACH | Bank of West | Transfer | | 100.00 | 100.00 |
| 6/9/2014 | 1183 | T&T Foods | Purchased Goods | | 15,000.00 | 15,000.00 |
| 6/9/2014 | 1186 | Wiberg | Seasonings | | 1,267.50 | 1,267.50 |
| 6/11/2014 | 1188 | Rocky's Foods | Purchased Goods | | 15,449.61 | 15,449.61 |
| 6/11/2014 | 1189 | Rocky's Foods | Purchased Goods | | 6,953.68 | 6,953.68 |
| 6/12/2014 | ACH | Bank of West | Misc. Fee | | 35.00 | 35.00 |
| 6/12/2014 | ACH | Bank of West | Over draft fees | | 26.00 | 26.00 |
| 6/12/2014 | ACH | Bank of West | Return item Fee | | 26.00 | 26.00 |
| 6/12/2014 | 1191 | T&T Foods | Purchased Goods | | 15,047.00 | 15,047.00 |
| 6/12/2014 | 1192 | T&T Foods | Purchased Goods | | 14,000.00 | 14,000.00 |
| 6/16/2014 | | Q Ranch | Transfer to Expense acc | | 500.00 | 500.00 |
| 6/17/2014 | 1187 | Wiberg | Seasonings | | 2,595.00 | 2,595.00 |
| 6/17/2014 | 1193 | Rocky's Foods | Purchased Goods | | 29,384.87 | 29,384.87 |
| 6/18/2014 | 1195 | Rocky's Foods | Purchased Goods | | 25,951.78 | 25,951.78 |
| 6/18/2014 | 1196 | T&T Foods | Purchased Goods | | 13,300.00 | 13,300.00 |
| 6/19/2014 | 1194 | Rocky's Foods | Purchased Goods | | 12,618.22 | 12,618.22 |
| 6/23/2014 | 1197 | Rocky's Foods | Purchased Goods | | 25,000.00 | 25,000.00 |
| 6/23/2014 | | Rocky's Foods | Purchased Goods | | 15,000.00 | 15,000.00 |
| 6/24/2014 | | Bank of West | Bank Debit for NSF | | 600.00 | 600.00 |
| 6/24/2014 | ACH | Bank of West | Return item Fee | | 12.00 | 12.00 |
| 6/24/2014 | 1198 | Rocky's Foods | Purchased Goods | | 12,497.52 | 12,497.52 |
| 6/24/2014 | 1199 | R & D | Purchased Goods | | 28,400.00 | 28,400.00 |
| 6/24/2014 | 1200 | R & D | Purchased Goods | | 28,400.00 | 28,400.00 |
| 6/24/2014 | 1201 | R & D | Purchased Goods | | 28,400.00 | 28,400.00 |
| 6/24/2014 | 1202 | R & D | Purchased Goods | | 27,100.70 | 27,100.70 |
| 6/25/2014 | ACH | Hardland Checks | Misc. Debit | | 40.07 | 40.07 |
| 6/25/2014 | 1204 | T&T Foods | Purchased Goods | | 15,000.00 | 15,000.00 |
| 6/27/2014 | 1205 | R & D | Purchased Goods | | 28,000.00 | 28,000.00 |
| 6/30/2014 | 1206 | Rocky's Foods | Purchased Goods | | 25,018.73 | 25,018.73 |
| 6/30/2014 | 1208 | Bro Pack | Purchased Goods | | 10,010.00 | 10,010.00 |
| 6/30/2014 | 1209 | Lap International | Purchased Goods | | 1,439.86 | 1,439.86 |
| 6/30/2014 | 1210 | T&T Foods | Purchased Goods | | 15,000.00 | 15,000.00 |
| 6/30/2014 | CC | Salomon | Purchased Goods | | 15,007.50 | 15,007.50 |
| 6/30/2014 | 1207 | Rocky's Foods | Purchased Goods | | 25,523.05 | 25,523.05 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| | | | | | | 0.00 |
| TOTAL DISBURSEMENTS THIS PERIOD: | | | | 0.00 | 543,100.92 | $543,093.42 |

* Fill in amounts in this column if they are TRANSFERS to another DIP account (e.g. Payroll or Tax); the "amount" column will be filled in for you.

** Fill in amounts in this column if they are DISBURSEMENTS to outside payees; the "amount" column will be filled in for you.

        Case 2:14-bk-19271-BR   Doc 27   Filed 07/17/14   Entered 07/17/14 14:06:43   Desc
                                Main Document   Page 3 of 18

GENERAL ACCOUNT

## BANK RECONCILIATION - N/A

Bank statement Date: _____6/30/2014_____   Balance on Statement: _____$91,406.06_____

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| | |
| | |
| | |
| | |
| | |

TOTAL DEPOSITS IN TRANSIT                                    | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

TOTAL OUTSTANDING CHECKS:                                    | 0.00 |

Bank statement Adjustments: _____
Explanation of Adjustments-

ADJUSTED BANK BALANCE:                                       | $91,406.06 |

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment

Case 2:14-bk-19271-BR    Doc 27    Filed 07/17/14    Entered 07/17/14 14:06:43    Desc
Main Document      Page 4 of 18

I. CASH RECEIPTS AND DISBURSEMENTS
B. (PAYROLL ACCOUNT) - N/A

1. TOTAL RECEIPTS PER ALL PRIOR PAYROLL ACCOUNT REPORTS _____ 0.00

2. LESS: TOTAL DISBURSEMENTS PER ALL PRIOR PAYROLL ACCOUNT REPORTS _____ 0.00

3. BEGINNING BALANCE: [ 0.00 ]

4. RECEIPTS DURING CURRENT PERIOD: _____ 0.00
   (Transferred from General Account)

5. BALANCE: [ 0.00 ]

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
   TOTAL DISBURSEMENTS THIS PERIOD:*** [ 0.00 ]

7. ENDING BALANCE: [ 0.00 ]

8. PAYROLL Account Number(s):          **General DIP Payroll Account\*\*\*\***
                                        **Bank of the West, Account No. \*\*\*\*9630**
   Depository Name & Location:          **Baldwin Park Branch**
                                        **14220 Ramona Blvd.**
                                        **Baldwin Park, California 91706**

****This DIP account was opened on June 16, 2014.

Case 2:14-bk-19271-BR   Doc 27   Filed 07/17/14   Entered 07/17/14 14:06:43   Desc
TOTAL DISBURSEMENTS FROM PAYROLL ACCOUNT FOR CURRENT PERIOD -
Main Document      Page 5 of 16

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | 0.00 |

Case 2:14-bk-19271-BR    Doc 27    Filed 07/17/14    Entered 07/17/14 14:06:43    Desc
Main Document    Page 6 of 18

PAYROLL ACCOUNT

BANK RECONCILIATION - N/A

Bank statement Date: _____6/30/2014_____    Balance on Statement: _____ $0.00

Plus deposits in transit (a):

| Deposit Date | Deposit Amount |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

TOTAL DEPOSITS IN TRANSIT                              | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

TOTAL OUTSTANDING CHECKS:                              | 0.00 |

Bank statement Adjustments:                            _____
Explanation of Adjustments-
_____

ADJUSTED BANK BALANCE:                                | $0.00 |

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment

Case 2:14-bk-19271-BR    Doc 27    Filed 07/17/14    Entered 07/17/14 14:06:43    Desc
Main Document    Page 7 of 18

I. CASH RECEIPTS AND DISBURSEMENTS
C. (EXPENSE ACCOUNT) - N/A

1. TOTAL RECEIPTS PER ALL PRIOR EXPENSE ACCOUNT REPORTS            $43,536.85

2. LESS:  TOTAL DISBURSEMENTS PER ALL PRIOR EXPENSE            $39,024.60
ACCOUNT REPORTS

3. BEGINNING BALANCE:            $4,512.25

4. RECEIPTS DURING CURRENT PERIOD:            $135,800.34
(Transferred from General Account)

5. BALANCE:            $140,312.59

6. LESS: TOTAL DISBURSEMENTS DURING CURRENT PERIOD
TOTAL DISBURSEMENTS THIS PERIOD:***            $134,827.50

7. ENDING BALANCE:            $5,485.09

8. EXPENSE Account Number(s):        **General DIP Expense Account****
Bank of the West, Account No. ****2572**

Depository Name & Location:        **Baldwin Park Branch
14220 Ramona Blvd.
Baldwin Park, California 91706**

TOTAL DISBURSEMENTS FROM EXPENSE ACCOUNT FOR CURRENT PERIOD

| Date mm/dd/yyyy | Check Number | Payee | Purpose | Amount |
|---|---|---|---|---|
| 6/1/2014 | 1201 | Jay Shih | 2502 Rent | $3,000.00 |
| 6/1/2014 | 1202 | Jay Shih | 2502 Rent | $3,000.00 |
| 6/2/2014 | 1212 | Mike's Shell | Gas | $2,341.14 |
| 6/2/2014 | ACH | Bank Of West | Service Charge | $10.00 |
| 6/4/2014 | 1204 | Employment Resources | Payroll | $3,799.00 |
| 6/4/2014 | ACH | Bank Of West | Ordered Checks | $386.83 |
| 6/5/2014 | 1213 | State Farm | Insurance ( Vehicle) | $1,871.54 |
| 6/5/2014 | 1214 | Link Company | Poly Bags | $2,164.50 |
| 6/6/2014 | | Bank Of West | Bank Debit for NSF | $530.02 |
| 6/6/2014 | | Bank of West | Transfer | $100.00 |
| 6/6/2014 | 1209 | Employment Resources | Payroll | $4,270.60 |
| 6/6/2014 | 1210 | One Stop Employment | Payroll | $13,136.95 |
| 6/6/2014 | 1215 | One Stop Employment | Payroll | $12,594.61 |
| 6/6/2014 | 1217 | Nede Management | 2508 Rent | $6,500.00 |
| 6/6/2014 | 1218 | Mike's Shell | Gas | $1,961.18 |
| 6/6/2014 | ACH | Bank Of West | Service Charge | $12.00 |
| 6/7/2014 | 1221 | Rojas Spice | Seasonings | $1,840.50 |
| 6/10/2014 | 1219 | AT&T | Telephone Utility bill | $427.87 |
| 6/10/2014 | 1220 | The Gas Company | Utility | $447.07 |
| 6/10/2014 | ACH | Edison | Utility | $575.00 |
| 6/10/2014 | ACH | Quill | Office Supplies | $881.39 |
| 6/11/2014 | 1216 | Employment Resources | Payroll | $3,582.85 |
| 6/11/2014 | 1224 | Link Company | Poly Bags | $2,303.00 |
| 6/11/2014 | 1225 | Mike's Shell | Gas | $1,885.47 |
| 6/13/2014 | 1223 | Employment Resources | Payroll | $3,799.00 |
| 6/16/2014 | | Bank Of West | Service Charge | $26.00 |
| 6/16/2014 | 1226 | One Stop Employment | Payroll | $13,304.63 |
| 6/19/2014 | 1228 | Farmer's Insurance | Liability Insurance | $962.00 |
| 6/20/2014 | 1227 | Wiberg | Seasonings | $2,595.00 |
| 6/20/2014 | 1229 | Link Company | Poly Bags | $2,238.50 |
| 6/20/2014 | 1232 | Mike's Shell | Gas | $1,969.45 |
| 6/20/2014 | 1233 | One Stop Employment | Payroll | $14,876.63 |
| 6/23/2014 | 1234 | United Janitorial | Supplies | $589.23 |
| 6/25/2014 | 1230 | Employment Resources | Payroll | $3,916.90 |
| 6/25/2014 | | Bank Of West | Ordered Checks | $40.07 |
| 6/25/2014 | | Bank Of West | Ordered Checks | $49.54 |
| 6/25/2014 | 1236 | Rojas Spice | Seasonings | $1,765.50 |
| 6/26/2014 | 1237 | Wiberg | Seasonings | $1,297.50 |
| 6/26/2014 | ACH | S. Cal Edison | Utility | $164.31 |
| 6/26/2014 | ACH | S. Cal Edison | Utility | $3,043.88 |
| 6/26/2014 | ACH | S. Cal Edison | Utility | $1,620.00 |
| 6/26/2014 | 1246 | Mike's Shell | Gas | $1,590.61 |
| 6/26/2014 | 1250 | One Stop Employment | Payroll | $13,357.23 |

Case 2:14-bk-19271-BR    Doc 27    Filed 07/17/14    Entered 07/17/14 14:06:43    Desc
Main Document    Page 9 of 18

| | | | | |
|---|---|---|---|---|
| | | | | |
| | | | TOTAL DISBURSEMENTS THIS PERIOD: | $134,827.50 |

Case 2:14-bk-19271-BR    Doc 27    Filed 07/17/14    Entered 07/17/14 14:06:43    Desc
Main Document      Page 10 of 18

EXPENSE ACCOUNT
BANK RECONCILIATION - N/A

Bank statement Date: _____6/30/2014____  Balance on Statement: _____$5,485.09

Plus deposits in transit (a):

| | Deposit Date | Deposit Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

TOTAL DEPOSITS IN TRANSIT                    | 0.00 |

Less Outstanding Checks (a):

| Check Number | Check Date | Check Amount |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

TOTAL OUTSTANDING CHECKS:                    | 0.00 |

Bank statement Adjustments:                  _____
Explanation of Adjustments-

ADJUSTED BANK BALANCE:                        | $5,485.09 |

* It is acceptable to replace this form with a similar form
** Please attach a detailed explanation of any bank statement adjustment

Case 2:14-bk-19271-BR   Doc 27   Filed 07/17/14   Entered 07/17/14 14:06:43   Desc
I. D SUMMARY SCHEDULE OF CASH N/A Main Document   Page 11 of 18

ENDING BALANCES FOR THE PERIOD:

(Provide a copy of monthly account statements for each of the below)

| | | |
|---|---|---|
| General Account: | | $91,406.06 |
| Payroll Account: | | $0.00 |
| Expense Account: | | $5,485.09 |
| *Other Accounts: | | |
| | | |
| | | |
| *Other Monies: | | |
| **Petty Cash (from below): | | $0.00 |

TOTAL CASH AVAILABLE:                                    $96,891.15

**Cashier's Check Transactions:*****

| Date | Purpose | Amount |
|---|---|---|
| 6/2/2014 | Miscellaneous Expense | $250.00 |
| 6/2/2014 | Car Wash | $35.00 |
| 6/2/2014 | Diesel Fuel | $82.00 |
| 6/2/2014 | Goods Purchased | $13,845.00 |
| 6/2/2014 | Goods Purchased | $19,519.50 |
| 6/2/2014 | Miscellaneous Expense | $287.48 |
| 6/2/2014 | Automobile expense | $760.00 |
| 6/2/2014 | Miscellaneous Expense | $225.00 |
| 6/2/2014 | Computer Repair | $500.00 |
| 6/2/2014 | Transportation Fleet Service | $39.66 |
| 6/5/2014 | County Sanitation Waste Disposal | $48.04 |
| 6/5/2014 | Goods Purchased | $13,942.50 |
| 6/5/2014 | Goods Purchased | $13,650.00 |
| 6/5/2014 | Goods Purchased | $30,000.00 |
| 6/6/2014 | A& G Fire extinguisher | $15.00 |
| 6/9/2014 | Goods Purchased | $56,854.40 |
| 6/9/2014 | Goods Purchased | $33,504.80 |
| 6/10/2014 | Miscellaneous Expense | $180.00 |
| 6/10/2014 | Car Wash | $105.00 |
| 6/10/2014 | Diesel Fuel | $96.00 |
| 6/10/2014 | Goods Purchased | $823.44 |
| 6/10/2014 | Goods Purchased | $13,747.50 |
| 6/10/2014 | Goods Purchased | $27,200.00 |
| 6/10/2014 | Automobile expense | $850.94 |
| 6/10/2014 | Computer Repair | $600.00 |
| 6/10/2014 | Miscellaneous Expense | $83.00 |

Case 2:14-bk-19271-BR    Doc 27    Filed 07/17/14    Entered 07/17/14 14:06:43    Desc
Main Document    Page 12 of 18

| Date | Description | Amount |
|---|---|---|
| 6/10/2014 | Computer Repair | $500.00 |
| 6/10/2014 | Goods Purchased | $13,650.00 |
| 6/10/2014 | Equipment Repair | $150.00 |
| 6/11/2014 | Goods Purchased | $20,000.00 |
| 6/12/2014 | Goods Purchased | $13,455.00 |
| 6/13/2014 | Goods Purchased | $7,041.42 |
| 6/13/2014 | Goods Purchased | $3,240.00 |
| 6/13/2014 | Goods Purchased | $27,600.00 |
| 6/13/2014 | Computer Repair | $1,000.00 |
| 6/13/2014 | Goods Purchased | $70,000.00 |
| 6/16/2014 | Goods Purchased | $27,495.00 |
| 6/17/2014 | Miscellaneous Expense | $110.00 |
| 6/17/2014 | Artic Glacier Ice | $1,141.45 |
| 6/17/2014 | Arriolas Tires | $401.32 |
| 6/17/2014 | Diesel Fuel | $240.00 |
| 6/17/2014 | Goods Purchased | $27,271.60 |
| 6/17/2014 | Goods Purchased | $41,100.00 |
| 6/17/2014 | Miscellaneous Expense | $607.58 |
| 6/18/2014 | Cesar Del Rio Forklift Repai | $3,000.00 |
| 6/18/2014 | Goods Purchased | $15,000.00 |
| 6/18/2014 | Goods Purchased | $35,000.00 |
| 6/20/2014 | Car Wash | $70.00 |
| 6/20/2014 | Chef Merito Seasoning | $202.00 |
| 6/20/2014 | Goods Purchased | $8,891.44 |
| 6/20/2014 | Goods Purchased | $17,722.15 |
| 6/23/2014 | Miscellaneous Expense | $180.00 |
| 6/23/2014 | Artic Glacier Ice | $514.73 |
| 6/23/2014 | Central L.A Ice | $160.00 |
| 6/24/2014 | Goods Purchased | $10,389.00 |
| 6/24/2014 | Goods Purchased | $5,611.00 |
| 6/24/2014 | Utility | $305.00 |
| 6/26/2014 | Goods Purchased | $12,000.00 |
| 6/27/2014 | Goods Purchased | $5,347.73 |
| 6/27/2014 | Miscellaneous Expense | $75.01 |
| 6/30/2014 | Goods Purchased | $10,000.00 |

TOTAL PETTY CASH TRANSACTIONS:                                    $606,715.69

****In addition to the funds deposited in the General DIP Account, Expense DIP Account, and Payroll DIP Account, Q Ranch Provisions, L.A. also received approximately $606,715.69 in gross income in June 2014, which funds were used to obtain cashiers checks to pay certain vendors who accept payments in the form of cashiers checks only.

* Specify the Type of holding (e.g. CD, Savings Account, Investment Security), and the depository name, location & account#

** Attach Exhibit Itemizing all petty cash transactions

Case 2:14-bk-19271-BR    Doc 27    Filed 07/17/14    Entered 07/17/14 14:06:43    Desc
Main Document    Page 13 of 18

## II. STATUS OF PAYMENTS TO SECURED CREDITORS, LESSORS
AND OTHER PARTIES TO EXECUTORY CONTRACTS

| Creditor, Lessor, Etc. | Frequency of Payments (Mo/Qtr) | Amount of Payment | Post-Petition payments not made (Number) | Total Due |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | TOTAL DUE: | 0.00 |

## III. TAX LIABILITIES

FOR THE REPORTING PERIOD:

Gross Sales Subject to Sales Tax: _____

Total Wages Paid: _____

| | Total Post-Petition Amounts Owing | Amount Delinquent | Date Delinquent Amount Due |
|---|---|---|---|
| Federal Withholding | | | |
| State Withholding | | | |
| FICA- Employer's Share | | | |
| FICA- Employee's Share | | | |
| Federal Unemployment | | | |
| Sales and Use | | | |
| Real Property | | | |
| Other: | | | |
| TOTAL: | 0.00 | 0.00 | |

IV.  AGING OF ACCOUNTS PAYABLE AND RECEIVABLE - N/A

| | *Accounts Payable Post-Petition | Accounts Receivable | |
| --- | --- | --- | --- |
| | | Pre-Petition | Post-Petition |
| 30 days or less | | | |
| 31 - 60 days | | | |
| 61 - 90 days | | | |
| 91 - 120 days | | | |
| Over 120 days | | | |
| TOTAL: | 0.00 | 0.00 | 0.00 |

## V. INSURANCE COVERAGE

| | Name of Carrier | Amount of Coverage | Policy Expiration Date | Premium Paid Through (Date) |
| --- | --- | --- | --- | --- |
| Commercial General Liability | Mid-Century Insurance | $2,000,000.00 | 6/20/2015 | 6/20/2015 |
| Employers Comp | Companion Prop & Cans | $1,000,000.00 | 3/1/2015 | 3/1/2015 |
| | | | | |
| | | | | |

## VI. UNITED STATES TRUSTEE QUARTERLY FEES
## (TOTAL PAYMENTS)

| Quarterly Period Ending (Date) | Total Disbursements | Quarterly Fees | Date Paid | Amount Paid | Quarterly Fees Still Owing |
| --- | --- | --- | --- | --- | --- |
| | | | | | 6,500.00 |
| 30-Jun-2014 | $1,939,832.84 | $6,500.00 | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | | | | | 0.00 |
| | 6,500.00 | | | 0.00 | 6,500.00 |

* Post-Petition Accounts Payable SHOULD NOT include professionals' fees and expenses which have been incurred but not yet awarded by the court. Post-Petition
Accounts Payable SHOULD include professionals' fees and expenses authorized by Court Order but which remain unpaid as of the close of the period report

Case 2:14-bk-19271-BR   Doc 27   Filed 07/17/14   Entered 07/17/14 14:06:43   Desc
Main Document   Page 15 of 18

## VII. SCHEDULE OF COMPENSATION PAID TO INSIDERS - N/A

| Name of Insider | Date of Order Authorizing Compensation | *Authorized Gross Compensation | Gross Compensation Paid During the Month |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## VIII. SCHEDULE OF OTHER AMOUNTS PAID TO INSIDERS - N/A

| Name of Insider | Date of Order Authorizing Compensation | Description | Amount Paid During the Month |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

* Please indicate how compensation was identified in the order (e.g. $1,000/week, $2,500/month)

Case 2:14-bk-19271-BR   Doc 27   Filed 07/17/14   Entered 07/17/14 14:06:43   Desc
Main Document   Page 16 of 18

IX. PROFIT AND LOSS STATEMENT N/A
(ACCRUAL BASIS ONLY)

|  | Current Month | Cumulative Post-Petition |
|---|---|---|
| Sales/Revenue: | | |
| Gross Sales/Revenue | | |
| Less: Returns/Discounts | | |
| Net Sales/Revenue | $0.00 | $0.00 |
| | | |
| Cost of Goods Sold: | | |
| Beginning Inventory at cost | | |
| Purchases | | |
| Less: Ending Inventory at cost | | |
| Cost of Goods Sold (COGS) | $0.00 | $0.00 |
| | | |
| Gross Profit | $0.00 | $0.00 |
| | | |
| Other Operating Income (Itemize) | | |
| | | |
| Operating Expenses: | | |
| Payroll - Insiders | | |
| Payroll - Other Employees | | |
| Payroll Taxes | | |
| Other Taxes (Itemize) | | |
| Depreciation and Amortization | | |
| Rent Expense - Real Property | | |
| Lease Expense - Personal Property | | |
| Insurance | | |
| Real Property Taxes | | |
| Telephone and Utilities | | |
| Repairs and Maintenance | | |
| Travel and Entertainment (Itemize) | | |
| Miscellaneous Operating Expenses (Itemize) | | |
| Total Operating Expenses | $0.00 | $0.00 |
| Net Gain/(Loss) from Operations | $0.00 | $0.00 |
| | | |
| Non-Operating Income: | | |
| Interest Income | | |
| Net Gain on Sale of Assets (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating income | $0.00 | $0.00 |
| | | |
| Non-Operating Expenses: | | |
| Interest Expense | | |
| Legal and Professional (Itemize) | | |
| Other (Itemize) | | |
| Total Non-Operating Expenses | $0.00 | $0.00 |
| | | |
| NET INCOME/(LOSS) | $0.00 | $0.00 |

(Attach exhibit listing all itemizations required above)

Case 2:14-bk-19271-BR   Doc 27   Filed 07/17/14   Entered 07/17/14 14:06:43   Desc
Main Document   Page 17 of 18

BALANCE SHEET
(ACCRUAL BASIS ONLY)

| | Current Month End | |
|---|---|---|
| **ASSETS** | | |
| Current Assets: | | |
| Unrestricted Cash | _____ | |
| Restricted Cash | _____ | |
| Accounts Receivable | _____ | |
| Inventory | _____ | |
| Notes Receivable | _____ | |
| Prepaid Expenses | _____ | |
| Other (Itemize) | _____ | |
| Total Current Assets | | $0.00 |
| | | |
| Property, Plant, and Equipment | _____ | |
| Accumulated Depreciation/Depletion | _____ | |
| Net Property, Plant, and Equipment | | $0.00 |
| | | |
| Other Assets (Net of Amortization): | | |
| Due from Insiders | _____ | |
| Other (Itemize) | _____ | |
| Total Other Assets | | $0.00 |
| **TOTAL ASSETS** | | $0.00 |
| | | |
| **LIABILITIES** | | |
| Post-petition Liabilities: | _____ | |
| Accounts Payable | _____ | |
| Taxes Payable | _____ | |
| Notes Payable | _____ | |
| Professional fees | _____ | |
| Secured Debt | _____ | |
| Other (Itemize) | _____ | |
| Total Post-petition Liabilities | | $0.00 |
| | | |
| Pre-petition Liabilities: | | |
| Secured Liabilities | _____ | |
| Priority Liabilities | _____ | |
| Unsecured Liabilities | _____ | |
| Other (Itemize) | _____ | |
| Total Pre-petition Liabilities | | $0.00 |
| **TOTAL LIABILITIES** | | $0.00 |
| | | |
| **EQUITY:** | | |
| Pre-petition Owners' Equity | _____ | |
| Post-petition Profit/(Loss) | _____ | |
| Direct Charges to Equity | _____ | |
| **TOTAL EQUITY** | | $0.00 |
| **TOTAL LIABILITIES & EQUITY** | | $0.00 |

## QUESTIONNAIRE

|   |   | No | Yes |
|---|---|----|-----|
| 1. | Has the debtor-in-possession made any payments on its pre-petition unsecured debt, except as have been authorized by the court? If "Yes", explain below: | X | |

|   |   | No | Yes |
|---|---|----|-----|
| 2. | Has the debtor-in-possession during this reporting period provided compensation or remuneration to any officers, directors, principals, or other insiders without appropriate authorization? If "Yes", explain below: | X | |

3. State what progress was made during the reporting period toward filing a plan of reorganization
   N/A

4. Describe potential future developments which may have a significant impact on the case: N/A

5. Attach copies of all Orders granting relief from the automatic stay that were entered during the reporting period.

|   |   | No | Yes |
|---|---|----|-----|
| 6. | Did you receive any exempt income this month, which is not set forth in the operating report? If "Yes", please set forth the amounts and sources of the income below. | X | |

I, Nereo Perez, President
declare under penalty of perjury that I have fully read and understood the foregoing debtor-in-possession operating report and that the information contained herein is true and complete to the best of my knowledge.

7 - 16 - 14
Date

Page 16 of 16

Principal for debtor-in-possession

## EXHIBIT C - LIST OF ADMINISTRATIVE EXPENSE CLAIMS

| Name | Code § | Amounts (Allowed + Estimated = Total Amount - Paid = Total Due) | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | Allowed to date | Estimated | Total Amount | Paid | Total Due |
| Aver Firm (est.) | 507(a) | -0- | $30,000.00 | $30,000.00 | -0- | $30,000.00 |
| Office Of U.S. Trustee | 507(a) | $10,400.00 | $10,400.00 | $10,400.00 | -0- | $10,400.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| TOTAL AMOUNTS | | $10,400.00 | $40,400.00 | $40,400.00 | $0.00 | $40,400.00 |

The header row above spans: **UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS**

ORIGINAL DISCLOSURE STATEMENT

Law Offices
of Raymond
H. Aver, APC

## EXHIBIT D - LIST OF GENERAL UNSECURED CLAIMS

### CLASSIFIED CLAIMS: UNSECURED CLAIMS

| Class | Name | Insider | Impaired | SCHEDULED CLAIMS | | FILED CLAIMS | |
|---|---|---|---|---|---|---|---|
| | | | | Amount | D/C/U* | Amount | Objection |
| 1 | AT&T | N | Y | $ 442.01 | N | | |
| | Cintas Corporation | N | Y | $ 3,502.83 | N | | |
| | County of Orange | N | Y | $ 490.00 | N | | |
| | County Sanitation | N | Y | $ 29,668.18 | N | | |
| | Dewey Pest Control | N | Y | $ 57.00 | N | | |
| | Franchise Tax Board | N | Y | | | $ 263.07 | N |
| | Eduardo's Foods Distribution | N | Y | $ 408.20 | N | | |
| | Harvest Meat Company, Inc. | N | Y | $ 80,526.83 | N | | |
| | Law Offices of Arturo Santana | N | Y | $ 15,000.00 | N | | |
| | Link Company | N | Y | $ 7,245.00 | N | | |
| | Michelson Laboratories, Inc. | N | Y | $ 400.00 | N | | |
| | Monarch Trading | N | Y | $ 199,057.60 | N | | |
| | Morgan Gallacher | N | Y | $ 2,459.27 | N | $ 3,654.68 | N |
| | National Commercial Recovery | N | Y | $ 889,114.83 | Y | $ 862,009.83 | Y |
| | New Meatco Provisions, LLC | N | Y | $1,395,647.00 | Y | $1,395,647.07 | Y |
| | Pac Scale | N | Y | $ 434.40 | N | | |
| | R&D Marketing, LLC | N | Y | $ 587,056.60 | N | | |
| | R.W. Zant Company | N | Y | $ 111,563.79 | N | | |
| | Ryder Transportation | N | Y | $ 12,053.55 | N | | |
| | San Gabriel Valley Water Comp. | N | Y | $ 227.17 | N | | |

Law Offices
of Raymond
H. Aver, APC

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Southern California Edison | N | | Y | $ 2,746.19 | N | $ 305.91 | N |
| United Janitorial & Packaging | N | | Y | $ 329.06 | N | | |
| TOTAL AMOUNT FOR CLASS | | | | $3,338,429.51 | | $2,261,880.56 | |

* Disputed/contingent/unliquidated

*ORIGINAL DISCLOSURE STATEMENT*

Law Offices
of Raymond
H. Aver, APC

EXHIBIT E - LIST OF EQUITY INTERESTS

## CLASSIFIED INTEREST: EQUITY SECURITY INTEREST HOLDERS

| Class | Name | Insider | Impaired | SCHEDULED INTERESTS | | FILED INTERESTS | |
| | | | | Percentage | D/C/U* | Percentage | Objection |
|---|---|---|---|---|---|---|---|
| 2 | Nereo Perez | Y | N | 100% | n/a | n/a | n/a |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | . | | | | | | |
| | | | | | | | |

* Disputed/contingent/unliquidated

ORIGINAL DISCLOSURE STATEMENT

Page 35

Law Offices
of Raymond
H. Aver, APC

1

**EXHIBIT F - UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

B6G (Official Form 6G) (12/07)

**IN RE** Q Ranch Provisions L.A., Inc.

Case No. 2:14-bk-19271-BR

Debtor(s)                                                                (If known)

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Jay Shih and Teresa Lee Shih 15038 Clark Avenue Hacienda Heights, CA 91745-1408 | 1 year lease of commercial real property located at 2502 and 2504 Lee Avenue, South El Monte, California 91733 commencing December 1, 2013. |
| Nede Management, Inc. P.O. Box 570541 Tarzana, CA 91357-0000 | 1 year lease of industrial/food processing building located at 2508 Lee Avenue, South El Monte, California 91733 commencing March 1, 2014 and ending February 28, 2015. |
| Penske Truck Leasing, Co., L.P. P.O. Box 563 Reading, PA 19603-0563 | Vehicle lease beginning June 10, 2013 of one 2012 Hino 268 4X2 truck, two 2012 Hino 338 4X2 truck, and one 2011 Isuzu NQR 4X2 truck. |

© 1993-2013 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

**NOTE**: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1950 Sawtelle Boulevard, Suite 120, Los Angeles, California 90025.

The foregoing document described **"ORIGINAL DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN"** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 21, 2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
- Raymond H Aver          ray@averlaw.com
- Bradley D Blakeley       bblakeley@blakeleyllp.com,
                           seb@blakeleyllp.com;rclifford@blakeleyllp.com;info@ecf.inforuptcy.com;ecf@blakeleyllp.com
- M Douglas Flahaut        flahaut.douglas@arentfox.com
- Mette H Kurth            kurth.mette@arentfox.com, nancy.peters@arentfox.com
- Ron Maroko               ron.maroko@usdoj.gov
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

____    Service information continued on attached page

II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):
On July 21, 2014, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

____    Service information continued on attached page

III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 21, 2014, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
Honorable Barry Russell
Bin outside of Suite 1660
____    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/21/2014 | Kateryna Bilenka | |
|---|---|---|
| Date | Name | Signature |